Opinion issued January 8, 2009 











 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00140-CR

____________


DONALD RAYE WASHINGTON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1102880






MEMORANDUM OPINION

 A jury found appellant, Donald Raye Washington, guilty of the offense of
murder (1) and, after finding true the allegation in an enhancement paragraph that
appellant had been previously convicted of one felony offense, assessed his
punishment at confinement for 40 years. In three issues, appellant contends that the
evidence is legally and factually insufficient to support the jury's implicit rejection
of his claim of self-defense, the trial court erred in excluding portions of his
testimony, and his trial counsel provided ineffective assistance of counsel. The State
contends that appellant's three issues should be overruled, but the judgment should
be corrected to properly reflect that appellant entered a plea of true to the allegation
in the enhancement paragraph and that the jury found this allegation to be true.

 We modify the trial court's judgment and, as modified, affirm.

Background

 Bridget Hubbard testified that she and Andra Davis, the complainant, lived in
a home on Bridgedale Lane. She explained that appellant had dated one of her
daughters and fathered two of her grandchildren. When these grandchildren stayed
with her, Hubbard allowed appellant to spend time with the children. 

 On February 2, 2007, Hubbard and the complainant had invited appellant to
come over to the Bridgedale Lane house to visit his two children. When appellant
arrived, he spent some time with the children and then accepted the complainant's
invitation to go to a barber shop for a haircut. After their haircuts, the two men
picked up dinner at a Whataburger restaurant and returned to the house. When the
two men returned, Hubbard was in the master bedroom with her four grandchildren,
two of whom were appellant's children. Appellant's daughter, hearing that her father
had returned to the house, ran out of the room to see him. Hubbard followed the child
into the hallway with appellant's infant child in her arms. 

 Hubbard explained that as she entered the hallway, she found the complainant
standing next to the bedroom door. Hubbard saw him look into her face and smile,
and she noticed appellant farther down the hallway with his daughter standing next
to him. Suddenly, appellant pulled a firearm from his right side, picked up his
daughter, pointed the weapon towards the bedroom doorway, and prepared to fire. 
The complainant pushed Hubbard out of the way, and, as she looked back, Hubbard
heard a single gunshot and watched the complainant fall to the ground. In fear for her
life, Hubbard ran out of the house, with appellant's infant child in her arms, and she
hid under her neighbor's truck. From her hiding place, Hubbard heard appellant
come outside and tell her neighbor that somebody was trying to kill him. After
waiting for appellant to leave, Hubbard used her neighbor's telephone to call for
emergency assistance. She then discovered that appellant had taken her car and
driven away with his older child and one of her other grandchildren.

 Shawn Lavoy, one of Hubbard's neighbors, testified that as he was cleaning out
his truck, he heard some yelling coming from the complainant's house. At first he
continued cleaning out his truck, but then he noticed a woman lifting up the
complainant's garage door. Lavoy did not recognize the woman, but he could tell
that she was hysterical. Lavoy looked back at his house where his nine-year-old son
was standing by the front door, and, when Lavoy turned around, he saw appellant
standing six or seven feet away with a hand in his pocket. Although Lavoy could not
recall everything that appellant said to him, he did remember that appellant told him
that someone had been trying to kill him. Appellant then told him, "Don't go
anywhere." However, Lavoy, fearing for his own life and his son's life, ran into his
house, locked the door, and called for emergency assistance. 

 Harris County Sheriff's Office Detective M. Quintanilla testified that he was
dispatched to the complainant's home, and, when he arrived, a deputy already at the
crime scene showed him the body of the complainant. Detective Quintanilla observed
that there were no weapons near the complainant's body, and he found no weapons
at the residence.

 Harris County Sheriff's Office Detective R. Tonry testified that upon arriving
at the crime scene one of Hubbard's daughters approached him with a cellular
telephone in her hand and, handing Tonry the telephone, she asked him to talk to
appellant. Appellant told Tonry that someone was trying to kill him and that the two
children were with him and were sleeping. When Tonry asked appellant to return to
the scene, appellant said "he had to get his boys together first." After the telephone
call ended, Tonry contacted another detective and told him to track the cellular
telephone and discovered that appellant was near Dallas in Navarro County.

 Navarro County Sheriff's Department Sergeant J. Lewis testified that,
responding to a police call, he intercepted appellant, who was driving Hubbard's car
on Interstate 45 in the early morning hours of February 3, 2007. Although Lewis had
activated his lights and siren, appellant did not stop. Lewis then contacted Texas
Highway Patrol Corporal J. Cabano to deploy spikes ahead of the car to stop it. After
it hit the spikes, the car continued traveling another one to two miles down the road
before coming to a full stop. Lewis approached the car with his weapon drawn and
instructed appellant to turn off the ignition, put his hands on the window, and exit the
car. Appellant complied with these instructions and was taken into custody. Other
state troopers at the scene found two children in the back seat of the car and took the
children to the county justice center, where they waited for their mothers. After the
children were removed from the car, Lewis searched it and found a jacket with a .380
caliber handgun in one of its pockets. 

 Appellant testified that on February 2, 2007, he went to the complainant's
home to see his children and talk to Hubbard and the complainant about his concerns
that they were teaching his children "things of immorality." After he and the
complainant went to a barber shop and a Whataburger restaurant, they returned to the
house. Appellant put his food down onto a table and told Hubbard and the
complainant, in a mild and nervous tone, that he wanted to talk with them outside of
the children's presence. When appellant asked them to talk, Hubbard "ran past
[appellant] and ran through the kitchen out of the garage." The complainant ran
towards the bedroom. Appellant "thought [the complainant] was going to get his
gun." Appellant testified that the complainant owned two handguns, one nine
millimeter and one .380 caliber, which he either carried, kept in his car, or left on his
bedroom dresser. Appellant thought that if he ran, the complainant would shoot him
in the back. So, appellant followed the complainant into the hallway. When he saw
the complainant coming back into the hallway from the bedroom, he pulled out his
weapon and fired one shot at the complainant's head. Before the complainant fell to
the floor, he asked if there were real bullets in the handgun. 

 After firing the shot, appellant picked up his daughter, put the gun into his
pocket, and went outside to explain to Hubbard that he only wanted to talk. When he
exited the garage, appellant saw Hubbard, who started screaming and ran away. 
Appellant went back inside of the house and took the car keys from the complainant's
pocket. As he was leaving the house, his niece asked to go with him, so appellant
took his niece and his daughter out to the car. Appellant testified that he did see
Lavoy on the way to the car, but he did not threaten him in any way. After putting the
two girls in the car, appellant drove north.

 On cross-examination, appellant admitted that he had shot and killed the
complainant and agreed that he did not see a weapon in the complainant's hand on
the night of the shooting. Appellant conceded that when he took the car keys, he also
took $600 cash and a cellular telephone from the complainant's pocket. Appellant
explained that he did not "steal" Hubbard's car because she had told him that he
could take it.

Sufficiency of the Evidence

 In his first issue, appellant argues that the evidence is legally and factually
insufficient to "overcome his claim of self-defense because there is ample evidence
to support a logical conclusion that [the complainant] had access to a gun." (2)

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)). In doing so, we
give deference to the responsibility of the fact-finder to fairly resolve conflicts in
testimony, to weigh the evidence, and to draw reasonable inferences from the facts. 
Id. However, our duty requires us to "ensure that the evidence presented actually
supports a conclusion that the defendant committed" the criminal offense of which
he is accused. Id. 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury's determinations. Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006). Although we should always be "mindful" that a jury is
in the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is "the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d at 416-17. Thus,
when an appellate court is "able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial." Id. at 417.

 A person is justified in using deadly force if (1) he has a reasonable belief that
it is immediately necessary to protect himself from another's use of deadly force and
(2) a reasonable person in his place would not retreat. See Tex. Penal Code Ann.
§§ 9.31(a), 9.32(a) (Vernon 2003). (3) A defendant has the burden of producing some
evidence to support a claim of self-defense. Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003) (citing Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim.
App. 1991)). Once a defendant presents evidence of self-defense, the State has the
burden of persuasion in disproving the evidence of self-defense. Id. The State is not
required to produce evidence refuting the self-defense claim; the State need only
prove its case beyond a reasonable doubt. Id. A jury verdict of guilty is an implicit
finding rejecting a defendant's self-defense theory. Id. When an appellant challenges
the legal sufficiency of the rejection of a self-defense claim, it is well-settled law that
appellate courts "look not to whether the State presented evidence which refuted
appellant's [defensive evidence], but rather we determine whether after viewing all
the evidence in the light most favorable to the prosecution, any rational trier of fact 
would have found . . . against appellant on the [defensive] issue beyond a reasonable
doubt." Saxton, 804 S.W.2d at 914. In a factual sufficiency review of the rejection
of a self-defense claim, we review "all of the evidence in a neutral light and [ask]
whether the State's evidence taken alone is too weak to support the finding and
whether the proof of guilt, although adequate if taken alone, is against the great
weight and preponderance of the evidence." Zuliani, 97 S.W.3d at 595.

 Appellant asserts that the undisputed evidence shows that the complainant
routinely kept loaded handguns in the bedroom at the complainant's house, appellant
was aware of the location of the handguns, and the complainant was coming out of
the bedroom after appellant attempted to start a conversation with him about the
upbringing of appellant's children.

 Viewing the evidence in the light most favorable to the verdict, appellant
admitted that he shot and killed the complainant. Additionally, appellant testified that
he never saw a weapon in the complainant's hands on the night of the shooting. 
Appellant stated that he pursued the complainant down the hallway, reached into his
pocket, released the safety on his firearm, and pulled the firearm out of his pocket. 
Then, when the complainant came back into the hallway, appellant shot him in the
eye. Detective Quintanilla testified that no weapons were found at the crime scene. 

 In sum, the evidence shows that a rational trier of fact could have found that
appellant either did not have a reasonable belief that deadly force was immediately
necessary to protect himself from another's use of deadly force or that a reasonable
person in appellant's place would have retreated. See Tex. Penal Code Ann. §§
9.31(a), 9.32(a). Accordingly, we hold that the evidence is legally sufficient to
support the jury's implied finding that appellant did not act in self-defense.

 In support of his argument that the evidence is factually insufficient to show
that he was not acting in self-defense, appellant asserts that the undisputed evidence
showed that the complainant routinely kept loaded handguns in the bedroom at the
complainant's house, appellant was aware of the location of the handguns, and the
complainant was coming out of the bedroom after appellant attempted to start a
conversation with him about the upbringing of appellant's children.

 Viewing the evidence in a neutral light, appellant testified that he believed that
the complainant kept two loaded handguns in the bedroom. However, Hubbard
testified that there was only one .380 caliber handgun kept in the bedroom and that
the complainant did not have access to the handgun. She did not state whether there
was any ammunition for the firearm at her residence. Additionally, although
appellant testified that he fired the weapon when the complainant exited the bedroom,
Hubbard testified that appellant fired the weapon just after she exited the bedroom
and that the complainant was next to the bedroom door. Nevertheless, it is
undisputed that appellant shot and killed the complainant and that appellant did not
see a weapon in the complainant's hands before appellant shot him. 

 By finding appellant guilty, the jury implicitly rejected his assertion that deadly
force was immediately necessary to protect himself from the complainant's use of
deadly force or that a reasonable person in his place would not have retreated. See
Tex. Penal Code Ann. §§ 9.31(a), 9.32(a). We conclude that the evidence is not so
obviously weak as to make the jury's verdict clearly wrong and manifestly unjust, nor
is the proof of guilt against the great weight and preponderance of the evidence. Accordingly, we hold that the evidence is factually sufficient to support the
jury's implied finding that appellant did not act in self-defense.

 We overrule appellant's first issue.

Excluded Testimony

 In his second issue, appellant argues that because it was "insightful and highly
relevant" to the issue of self-defense, the trial court erred in excluding his testimony
regarding the specific contents of the conversation that took place between appellant
and the complainant before appellant shot the complainant and in excluding the
specifics about the "immoral teachings" appellant believed the complainant and
Hubbard had been exposing his children to.

 First, appellant asserts that the trial court excluded his testimony about "the
content of the conversation immediately prior to the shooting of" the complainant. 
However, the record does not support appellant's assertion. The record shows that
during the re-direct examination of appellant, the State objected to a question about
the conversation. The trial court did not explicitly rule on the objection but, after a
bench conference, allowed appellant to explore the tone of the conversation. When
appellant was asked about the tone of the conversation, he testified as follows:

 [Appellant]: It was mild toned but a nervous tone.

 

 [Appellant's Counsel]: Did you believe the subject matter of that
conversation to be important?


 [Appellant]: Very much so.

 

 [Appellant's Counsel]: Did you try to relay the information to Ms.
Hubbard and [the complainant]?

 

 [Appellant]: Actually, they didn't give me time.

(Emphasis added.) Appellant's testimony during this portion of his re-direct
examination mirrored his testimony during direct examination, i.e., when appellant
told the complainant and Hubbard that he wanted to talk, Hubbard ran out of the
house, and the complainant ran towards the bedroom. Thus, according to appellant's
own testimony, the entire conversation consisted of his statement that he wanted to
talk to Hubbard and the complainant. The trial court did not exclude this testimony
about the conversation that occurred. 

 Appellant next asserts that the trial court excluded his testimony about the
specific "immoral teachings" that he was concerned about. When appellant attempted
to discuss the content of these "immoral teachings," the trial court sustained the
State's relevance objection.

 Testimony is relevant if it has "any tendency to make the existence of any fact
that is of consequence to the determination of the action more or less probable than
it would be without the evidence." Tex. R. Evid. 401. Irrelevant evidence is
inadmissible. Tex. R. Evid. 402. We do not disturb a trial court's determination
regarding the relevance of evidence unless an abuse of discretion has been shown. 
Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). 

 Here, appellant asserts that the excluded testimony "goes directly to the heart
of his claim of self-defense" and was relevant to show his state of mind prior to the
shooting "which might justify his self-defense claim." However, appellant does not
explain, nor are we able to discern, how any testimony about the contents of any
"immoral teachings" would have any tendency to make his self-defense claim more
or less probable. 

 Accordingly, we hold that the trial court did not err in excluding testimony
about the "immoral teachings."

 We overrule appellant's second issue.Ineffective Assistance of Counsel

 In his third issue, appellant argues that his trial counsel rendered ineffective
assistance of counsel because he failed to submit a formal bill of exceptions
"concerning the contents of [his] conversation with Ms. Hubbard and [the
complainant], which arose during his re-direct examination." 

 In order to prove an ineffective assistance of counsel claim, appellant must
show that his trial counsel's performance fell below an objective standard of
reasonableness and, but for counsel's unprofessional error, there is a reasonable
probability that the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Andrews v. State, 159
S.W.3d 98, 102 (Tex. Crim. App. 2005). Allegations of ineffectiveness must be
firmly founded in the record. Bone v. State, 77 S.W.3d 828, 833 & n.13 (Tex. Crim.
App. 2002). When the record is silent, we may not speculate to find trial counsel
ineffective. Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.]
1996, no pet.). Appellant must prove ineffective assistance by a preponderance of the
evidence and must overcome the strong presumption that counsel's conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. Robertson v. State, 187 S.W.3d 475, 482-83 (Tex.
Crim. App. 2006); Gamble, 916 S.W.2d at 93. A failure to make a showing under
either prong defeats a claim for ineffective assistance. Rylander v. State, 101 S.W.3d
107, 110 (Tex. Crim. App. 2003).

 Here, appellant did not request a hearing on a motion for new trial. Had
appellant requested such a hearing, he could have presented evidence of the contents
of any such conversation and conducted an examination of his trial counsel as to why
he did not submit a bill of exceptions. To find that trial counsel was ineffective in
this case, without a motion for new trial hearing, would call for speculation, which
we will not engage in. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994); Gamble, 916 S.W.2d at 93. Accordingly, we hold that appellant has not
satisfied the first prong of Strickland. See Strickland, 466 U.S. at 687, 104 S. Ct. at
2064. 

 We overrule appellant's third issue.

Correction of the Judgment

 The State contends that the "written judgment should be corrected because it
fails to properly reflect that appellant entered a plea of true to the enhancement
paragraph and the jury found the allegations in the enhancement paragraph to be
true." An appellate court may correct and reform a trial court judgment when it has
the necessary information to do so. Tex. R. App. P. 43.2(b); Nolan v. State, 39
S.W.3d 697, 698 (Tex. App.--Houston [1st Dist.] 2001, no pet.). 

 Here, the record reflects that appellant pleaded true to the enhancement
paragraph:

 [The State]: This is Cause No. 1102880 the State of Texas vs.
Donald Raye Washington. Before the commission
of the offense alleged above on November 24, 1993,
in Cause No. 0644755 in the 262nd District Court of
Harris County, Texas, the defendant was convicted
of the felony offense of robbery.

 

 [The Court]: Mr. Washington, to that enhancement paragraph,
how do you plead, sir; true or not true?

 

 [Appellant]: True, Your Honor.

Furthermore, the record reflects that the jury found that "the allegations in the
enhancement paragraph are true." Nevertheless, the written judgment entered by the
trial court on February 14, 2008, incorrectly states "N/A" next to "Plea to 1st
Enhancement Paragraph" and next to "Findings on 1st Enhancement Paragraph."

 Accordingly, we reform the written judgment to reflect that appellant pleaded
true to the allegation in the first enhancement paragraph and that the jury entered a
finding that the allegation in the first enhancement paragraph is true.

Conclusion

 We modify the judgment of the trial court to reflect that appellant pleaded true
to the allegation in the first enhancement paragraph and that the jury entered a finding
that the allegation in the first enhancement paragraph is true. We affirm the judgment
as modified.


 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 





1. See Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).
2. Appellant concedes that the evidence is legally and factually sufficient to meet the
required elements of murder because appellant "admitted to the crime during cross-examination."
3. Although the Legislature has amended sections 9.31 and 9.32 of the Penal Code, the
offenses for which the jury convicted appellant occurred on February 2, 2007, which
was before the effective date of the amendments. Accordingly, our analysis of
appellant's issues is governed by the previous version of the statutes. Act of June 19,
1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3598 (amended
2007); Act of May 27, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141,
2141 (amended 2007).